UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LAWN MANAGERS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:16 CV 144 DDN |
| | ) | |
| PROGRESSIVE LAWN MANAGERS, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER STAYING ACTION
PENDING STATE COURT CASE RESOLUTION**

On December 16, 2016, on motion of defendant, the court conferred with both parties about the management of this case. Following this conference, on its own motion, the court takes up the subject matter jurisdiction of the district court to decide this case in its current posture. "It is well established that a court has a special obligation to consider whether it has subject matter jurisdiction," and it may do so *sua sponte* where it believes that jurisdiction may be lacking. *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011); *see also* Fed. R. Civ. P. 12(h)(3).

### I.  Background

This trademark dispute arises out of a 2012 divorce between Randy Zweifel, the principal of plaintiff Lawn Managers, Inc., and Linda Smith (formerly Zweifel), the principal of defendant Progressive Lawn Managers, Inc. (ECF No. 1, ¶¶ 6-10). Prior to their divorce, Linda and Randy held equal ownership interests in plaintiff Lawn Managers, Inc. (ECF No. 30, Ex. 1 at § 5.01). As part of their marital settlement agreement, Linda and Randy divided their interests in the plaintiff corporation's residential accounts and accounts receivables by zip code. (*Id.* at § 5.02). Linda was awarded the accounts in certain specified zip codes, and Randy was awarded the accounts

1

in other specified zip codes.  (*Id.*)  Linda agreed to assign all of her shares in the plaintiff corporation to Randy, who was permitted to retain the corporate name of "Lawn Managers, Inc."  (*Id.*)

Pursuant to the marital settlement agreement, Linda could then "establish a new lawn care company using the name Progressive Lawn Managers, Inc. doing business as Lawn Managers."  (*Id.* at § 5.06).  Linda could use the name "Lawn Managers" for up to two years from the date of the divorce, at which time she must discontinue using the name Lawn Managers, though she would still be permitted to use the name "Progressive Lawn Managers, Inc."  (*Id.*)  The divorce was finalized in May 2012.  (*Id.* at Ex. 1). There have been a number of contempt motions in the state court based on alleged breaches of the divorce agreement, as well as motions to modify the divorce agreement. Following one such dispute in 2014, the parties agreed to extend Linda's right to use the name "Lawn Managers" for approximately six additional months, until Dec. 31, 2014. (ECF No. 30, Ex. 2).  They specifically noted that she could continue to use the name Progressive Lawn Managers, Inc., after that date.  (*Id.*)  Additional motions for contempt and motions to modify are ongoing.

Parallel to the divorce and post-dissolution proceedings, plaintiff Lawn Managers made certain applications with the United States Patent and Trademark Office.  Before the divorce was finalized, plaintiff Lawn Managers filed an application to register its service mark, consisting of the words "Lawn Managers" within a rectangle atop two footprints.  (ECF No. 1, Ex. 1).  This was filed in November 2011, published in May 2012, and registered in August 2012.  (*Id.*)  Then, in February 2015, Lawn Managers filed an application to register the name "lawn managers."  (*Id.*)  Registration was granted in October 2015.  (*Id.*)

In February 2016, Lawn Managers brought the instant federal trademark infringement suit against Progressive Lawn Managers under the Lanham Act, 15 U.S.C. § 1114, alleging that defendant's logo was too similar to its own and confusing consumers because the phrase "Lawn Managers" was the largest text of the logo.  (ECF No. 1).

2

In August, counsel for plaintiff Lawn Managers appeared at a post-divorce hearing in state court in order to protect plaintiff's trademark interests. (ECF No. 30, Ex. 4). That court noted it was not considering anything with regard to trademark at that time, but "either side could bring that up in a motion for contempt." (*Id.*)

Counsel for defendant subsequently asked this court for a supplemental case management conference to bring the overlapping nature of these suits to the court's attention. (ECF No. 30). Defendant has not made any written or oral jurisdictional motion and plaintiff has requested that the court require defendant to do so. (ECF No. 32). However, as noted above, a court may consider on its own motion whether it has subject matter jurisdiction to decide a case.

## II.  Subject Matter Jurisdiction

Plaintiff alleges that this controversy presents a federal question over which this court has original subject matter jurisdiction. (ECF No. 1, ¶ 3) (citing 15 U.S.C. § 1114, 1121 and 28 U.S.C. §§ 1331, 1338, 1367). While the complaint on its face may present such a question, there are nevertheless additional principles the court must consider in determining the justiciability of this case in federal court. Federal abstention is appropriate here because of the ongoing nature of the related state court proceedings, the strong state interest in domestic relations matters and enforcement of state judgments, and in order to promote wise and efficient judicial administration.

### A. Legal Standard

While a federal court's obligation to hear and decide a case is "virtually unflagging," federal courts apply judicially-created abstention doctrines in specific, limited circumstances. *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013) (citations omitted). Relevant here are the *Younger* and *Colorado River* forms of abstention. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *Younger v. Harris*, 401 U.S. 37 (1971).

3

Federal courts apply *Younger* abstention to avoid interfering with two kinds of pending state civil cases: (1) enforcement proceedings and (2) cases involving "certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *New Orleans Public Service, Inc. v. Council of City of New Orleans (NOPSI)*, 491 U.S. 350, 367-68 (1989); *see also Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10 (1987).

Federal courts apply *Colorado River* abstention to promote wise judicial administration when there are "substantially similar" concurrent state and federal proceedings. *Colorado River*, 424 U.S. at 817-18. The *Colorado River* doctrine considers six prudential factors, carefully "taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise." *Id.* at 818-19; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983). Under this doctrine, "[o]nly the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 818-19.

**B. Discussion of *Younger* Abstention**

Although the instant claim alleges trademark infringement, the true nature of the action is the enforcement and modification of a state court's order dividing marital property, while that order is subject to ongoing post-dissolution modifications and contempt motions.[1] Moreover, it appears that this state order, as a domestic relations decree, is of a kind "uniquely in furtherance of the state courts' ability to perform their judicial functions." *NOPSI*, 401 U.S. at 367-68.[2] Accordingly, abstention is appropriate under *Younger* to avoid interfering with these pending state proceedings.

---

[1] The court takes judicial notice of the pending state court docket of Linda R. Zweifel v. Randall Zweifel, 09JE-DR00715-01, available at https://www.courts.mo.gov/casenet. *See also* ECF No. 30; *Matter of Phillips,* 593 F.2d 356, 358 (8th Cir. 1979) (holding that a federal court may properly take judicial notice of state court proceedings).

[2] Linda and Randy's separation agreement was incorporated into a divorce decree, and the Supreme Court of Missouri has held that the terms of a separation agreement are part of a court's divorce judgment, unless the agreement or the court specifically provides

*Younger* abstention initially only applied to federal interference with criminal claims. However, out of concern for comity and federalism, the Supreme Court has expanded *Younger* protection to certain civil proceedings. *See, e.g., Sprint,* 134 S. Ct. at 591; *Pennzoil v. Texaco*, 481 U.S. 1, 14 (1987); *Juidice v. Vail*, 430 U.S. 327, 3335 (1977). While no doctrine prevents concurrent state and federal jurisdiction on the ground of duplicative litigation alone, the Court has recognized the importance of protecting the state's interest in the regular operation of its judicial system. For example, in *Juidice v. Vail*, the Supreme Court noted that the contempt process "vindicates the regular operation of" and "lies at the core of the administration of a state's judicial system." 430 U.S. 327, 3335 (1977).

Matters of domestic relations are uniquely within the state's interest. State courts hear divorce proceedings, retain jurisdiction over post-dissolution proceedings, and enforce divorce decrees through contempt proceedings. For this and other reasons, the Court has long considered federal abstention to be appropriate in domestic relations disputes:

> As a matter of judicial economy, state courts are more eminently suited to [domestic relations disputes] than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees. Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees.

*Ankenbrandt v. Richards,* 504 U.S. 689, 704 (1992).

This case is not just a trademark suit with a domestic relations background; it is a domestic relations dispute over the ownership of marital property, which happens to be a trademark. Randy and Linda were co-owners of the business while married to each other, and the business' name, "Lawn Managers" was presumably, at least to some extent,

---

otherwise—which was not the case here. *See Lay v. Lay*, 912 S.W.2d 466, 467 (Mo. 1995) (citing the Dissolution of Marriage Act, Mo. Rev. Stat. § 452.325); ECF No. 30, Ex. 1.

5

marital property. *See* Mo. Rev. Stat. § 452.330.2. The divorce settlement reinforces this presumption by specifically discussing the name and awarding Randy and Linda various rights in the use of the name. (ECF No. 30, Ex. 1 at §§ 5,01, 5.06). The state court has retained jurisdiction over the ongoing post-dissolution disputes involving this and other marital property. There are pending motions to modify and motions for contempt.[3] The instant federal suit, therefore, involves marital property related to pending state proceedings.

Furthermore, the present action seeks to modify the divorce decree: while Linda was awarded the right to use the name "Progressive Lawn Managers" in that decree, this suit seeks not merely to enforce the divorce decree's time limitation on her use of the name "Lawn Managers" alone, but seeks to prohibit her use of the phrase "lawn managers" in any form. Federal courts may enforce final judgments related to divorce or alimony, but they do not have authority to hear and decide suits seeking the granting or modification of a divorce or alimony decree. *Ankenbrandt*, 504 U.S. at 701-02; *see also Barber v. Barber*, 21 How. 582, 16 L. Ed. 226 (1859) (holding that federal judicial interference in domestic relations disputes "is limited to cases in which alimony has been decreed; then only to the extent of what is due, and always to cases in which no appeal is pending from the decree for the divorce or for alimony.")

Plaintiff has suggested that this suit should be heard in federal court because the parties involved here are the corporate counterparts of the state court parties, not the state court parties themselves. However, the trademark and the corporations' underlying rights are part of a separation agreement that was voluntarily entered into by the principals of the closely-held corporate parties to this suit. Whatever rights the corporations have are inextricably entwined with the rights of the state court parties, Randy and Linda, who are the principals of the corporate parties to this action. (ECF No. 1). Randy and Linda continue to have obligations and rights related to the disputed trademark that were

---

[3] *See* the state court docket of Linda R. Zweifel v. Randall Zweifel, 09JE-DR00715-01, available at https://www.courts.mo.gov/casenet/cases/searchDockets.do.

imposed by their divorce decree. Missouri courts have adopted the Restatement of Judgments on this matter in holding that, for the purposes of jurisdictional considerations,

> there is no good reason why a closely held corporation [where one or a few persons hold substantially the entire ownership] and its owners should be ordinarily regarded as legally distinct. On the contrary, it may be presumed that their interests coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect both.

*Missouri Mexican Prod., Inc. v. Dunafon*, 873 S.W.2d 282, 286 (Mo. Ct. App. 1994) (quoting Restatement (Second) of Judgments at § 59, cmt e).

This court is unwilling to modify a divorce decree or otherwise interfere with pending state matters related to the enforcement of a divorce decree. This suit depends on pending determinations of status in the state court that are uniquely within the state's interest. Accordingly, abstention is appropriate under *Younger*.

## C.  Discussion of *Colorado River* Abstention

A second form of abstention is also applicable here. Federal courts apply *Colorado River* abstention when there are "substantially similar" concurrent state and federal proceedings. *Colorado River*, 424 U.S. at 817-18. The language of the complaint and of plaintiff's motion for partial summary judgment (ECF No. 33 and its attachments) show plaintiff's claim to be part of an ongoing series of disputes centering around a dissolved but still turbulent marital relationship.

The *Colorado River* doctrine considers six factors: (1) whether either court had assumed jurisdiction over a *res*, (2) the relative convenience of the forums, (3) the desirability of avoiding piecemeal litigation, (4) the order in which the forums obtained jurisdiction, (5) whether state or federal law controls and (6) whether the state proceeding is adequate to protect the parties' rights. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 25-26. In the present case, a number of factors clearly counsel against concurrent federal proceedings.

7

The two actions involve similar issues between substantially the same parties.[4] The state court retains jurisdiction over disputes related to marital property. Furthermore, if both cases were to proceed concurrently, this would likely result in piecemeal litigation, with a strong possibility of incompatible federal and state court decrees involving the same property. It would be inefficient for the trademark case to proceed before the final rights of the parties to the trademark were determined in the post-dissolution proceedings. The divorce proceedings have been pending in state court for several years, while this federal suit was commenced thereafter in February 2016. State law controls the determination of the parties' underlying rights and obligations regarding marital property. As the parties both are citizens of the Eastern District of Missouri, the convenience of the forums is irrelevant.

However, significant factors counsel against outright dismissal of the case: Under 15 U.S.C. § 1121(a), federal courts have original jurisdiction over all claims arising under the Lanham Act. While this is not exclusive jurisdiction, and state courts have concurrent jurisdiction over these claims as well, "federal courts now decide all but a few trademark disputes." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 782 n.16 (1992) (Stevens, J., concurring in judgment) (citations omitted). *See also Verizon Commc'n, Inc. v. Inverizon Int'l, Inc.,* 295 F.3d 870, 873 (8th Cir. 2002). The instant dispute raises a claim under the Lanham Act, which is the "paramount" trademark law in the United States and "almost exclusively" interpreted by federal courts. *Two Pesos*, 505 U.S. at 782 n. 16. It therefore involves a federal question, and "the presence of federal law issues must always be a major consideration weighing against surrender" of federal jurisdiction. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 26; *Verizon*, 295 F.3d at 873.

In this case, plaintiff's Lanham Act claim does not present novel issues of federal law, and does not transcend or exist apart from the family law issue, at least at this stage of the pending litigation. In *Elk Grove*, the Supreme Court held that "while rare instances

---

[4] *See supra* Section II.B for a discussion of the identity of the parties for purposes of jurisdiction.

arise in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue, in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts." *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 13 (2004) (citing *Palmore v. Sidoti*, 466 U.S. 429, 432-434 (1984)).  The court believes the same rationale applies to the present case.  Although plaintiff's claim in this action raises a federal question, it is not so substantial that it transcends or exists apart from the family law issues at this time.  After the property interests of the parties in the trademark have been finally adjudicated in the state court post-dissolution proceedings, any remaining issues of federal law can then be addressed by the federal court.

Accordingly,

**IT IS HEREBY ORDERED** that this federal court action is stayed until such time as it is shown that the state courts have finally adjudicated the property interests of the state court parties in the subject trademark.

**IT IS FURTHER ORDERED** that the parties must file documentary reports on the status of the subject state court proceedings' final resolution of the property interests of the state court parties in the subject trademark.  These reports must be filed in this federal action every two calendar months, on or about the first day of the month, with the first report being filed on or about April 1, 2017.

**IT IS FURTHER ORDERED** that all pending motions (ECF Nos. 33, 37) are denied without prejudice.


　　　　　　　　　　　　　　　　　/S/   David D. Noce            
　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

Signed on January 9, 2017.