UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAWN MANAGERS, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.   ) | No. 4:16 CV 144 DDN |
| ) | |
| PROGRESSIVE LAWN MANAGERS, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER

This action is before the court on the motion of plaintiff Lawn Managers, Inc., for partial summary judgment.  (Doc. 53).  Plaintiff moves for summary judgment on defendant Progressive Lawn Managers, Inc.'s defenses of collateral estoppel, consent, release, waiver, and unclean hands, as well as its counterclaim alleging abandonment of trademark.  The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  The court heard oral argument on June 27, 2017.  For the reasons discussed below, the court grants the motion in part and denies the motion in part.

### I.  Legal standard for summary judgment

Summary judgment is proper "if there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party."  *Shrable v. Eaton Corp.*, 695 F.3d 768, 770 (8th Cir. 2012); *see also* Fed. R. Civ. P. 56(a).  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving party.  *Rademacher v. HBE Corp.*, 645 F.3d 1005,

1010 (8th Cir. 2011). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. *Scott v. Harris*, 550 U.S. 372, 379-80 (2007). The burden shifts to the non-moving party to demonstrate that disputes of fact do exist only after the movant has made its showing. *Id.*

## II.  Undisputed facts

Unless otherwise noted, the parties do not dispute the following facts. Randy Zweifel is the principal owner of Lawn Managers. (Docs. 53, Ex. 1 at ¶ 1; 57 at ¶ 1). Linda Smith is the principal owner of defendant Progressive Lawn Managers. (Docs. 53, Ex. 1 at ¶ 2; 57 at ¶ 2). Prior to their divorce in May 2012, Linda and Randy each owned 50 percent of Lawn Managers and the marks at issue in this case. (Docs. 53, Ex. 1 at ¶ 1; 57 at ¶ 3, 19; 61, Ex. 1 at ¶ 19). The marital settlement agreement between Randy and Linda was incorporated into their divorce decree and provided that:

> <u>Development of New Business</u> Linda will establish a new lawn care company using the name Progressive Lawn Managers, Inc. doing business as Lawn Managers. The parties agree that Linda may use the name Lawn Managers for a period of time no longer than two years from the date of dissolution of marriage. At the end of two years from the date of dissolution of marriage, or sooner if Linda wishes, Linda will use the name Progressive Lawn Managers, Inc. and will discontinue using the name Lawn Managers.
>
> * * *
>
> <u>Enforcement and Construction of Terms</u>  The terms of this Agreement are expressly intended to be construed as contractual, with reference so RSMo. Section 452.325, as amended, and therefore nonmodifiable, except as may otherwise be expressly noted; however, the parties also expressly intend for this Agreement to be construed as decretal for the purposes of enforcement. The parties agree that failure of either party to insist upon strict performance of one or more of the terms and provisions of this Agreement shall not be construed as a waiver or relinquishment in the future of any such term and provision all of which shall continue in full force and effect. Further, no waiver of any default shall be deemed a waiver of a subsequent default. The validity and construction of this Agreement shall be determined in accordance with the laws of the State of Missouri.

\* \* \*

<u>Review and Modification of This Agreement</u>  No modification or waiver of any of the terms of this Agreement shall be valid unless it is in writing and signed by both parties and where necessary, approved by a court of competent jurisdiction as required by law.

\* \* \*

<u>Binding Effect</u>  This Agreement shall be binding on the heirs, representatives, and assigns of the parties except as to the specific paragraphs that contain provisions for termination of obligations on the death of either or both parties.

(Docs. 53, Ex. 1 at ¶ 5 and 57 at ¶ 5; Doc. 30 at Ex. 1)[1].

Pursuant to this marital settlement agreement, Linda relinquished her share of Lawn Managers in exchange for certain consideration described in the court orders. (Doc. 57 at ¶ 4). The agreement divested Linda of her rights to the Lawn Managers marks, awarded Linda use of the name "Progressive Lawn Managers," and imposed rules on the conduct of business by both Linda and Randy. (Docs. 57 at ¶ 20; 61, Ex. 1 at ¶ 20). They each agreed not to solicit business in the zip codes awarded to the other. (Docs. 57 at ¶ 22; 61, Ex. 1 at ¶ 22). Linda started Progressive Lawn Managers in 2012. (Doc. 53, Ex. 1 at ¶ 4).

Following their divorce, Linda and Randy filed cross motions for contempt for unrelated violations of the marital settlement agreement. (Docs. 53, Ex. 6 at ¶ 1; 57 at ¶ 6). The parties reached a settlement agreement on these motions in July 2014, which included the extension of Linda's permission to use the name "Lawn Managers" until December 31, 2014. (Docs. 53, Ex. 1 at ¶¶ 7-8; 57 at ¶¶ 7-8). This settlement agreement was incorporated into a judgment on July 25, 2014. (Doc. 57 at ¶¶ 7-8). Defendant argues but plaintiff denies that Randy violated and continues to violate the zip code

---

[1] Although some of these provisions are not set out specifically in either party's statement of fact, there is no dispute regarding the accuracy or comprehensiveness of the exhibit containing the divorce decree. (Doc. 30 at Ex. 1). A court may consider other materials in the record that have not been cited. Fed. R. Civ. P. 56(c)(3).

restrictions and is advertising using one of Progressive's phone numbers.  (Docs. 25 at ¶ 11; 57 at ¶¶ 23-25; and 61, Ex. 1 at ¶¶ 23-25;).

Plaintiff alleges that defendant's logo continued to use the phrase "Lawn Managers" after December 31, 2014, in that the logo contains "Lawn Managers" in large type and the word "Progressive" in small type in an image to the left.  (Doc. 1 at 18, Ex. 3).  In November 2015, plaintiff's counsel sent a letter to defendant requesting that it change its logo, signage, and business practices.  (Docs. 53, Ex. 1 at ¶ 13; 57 at ¶ 13).  Defendant's counsel responded in December 2015 explaining defendant would not change its logo, signage, or business practices.  (Docs. 53, Ex. 1 at ¶ 14; 57 at ¶ 14).

On February 4, 2016, plaintiff filed the instant suit against defendant, alleging defendant's continued use of the names "Progressive Lawn Managers" and "Lawn Managers" infringed its trademark rights.  (Docs. 53, Ex. 1 at ¶ 15; 57 at ¶ 15).  In its amended answer to plaintiff's complaint, defendant alleges:

> 15. As a result of its allowing others to use the claimed LAWN MANAGERS marks without exercising control of the services or goods associated with the registered marks, LMI has nakedly licensed its marks and thereby abandoned the LAWN MANAGERS marks within the meaning of 15 U.S.C. § 1127.

(Docs. 53, Ex. 18 at ¶ 1; 57 at ¶ 18).

Plaintiff asserts that "[i]n 2011, defendant's principal was aware of and participated in the discussions with trademark counsel."  (Doc. 53, Ex. 1 at ¶ 17) (citing Doc. 53, Ex. 4).  Defendant denies this statement, and the court notes that the cited testimony refers only to an accidental phone call from plaintiff's counsel to Ms. Smith and the general statement with no elaboration from Ms. Smith that "[she] dealt with [plaintiff's counsel] too in 2011."  (Docs. 53, Ex. 4; 57 at ¶ 17).

Lawn Managers states it has withdrawn its consent for Ms. Smith to use the names "Lawn Managers" and "Progressive Lawn Managers."  (Docs. 57 at ¶ 26; 61, Ex. 1 at ¶ 26).  No filings with the Circuit Court of Jefferson County have requested that that court modify the right of Ms. Smith to use the name "Progressive Lawn Managers" for her company, as provided in the divorce decree.  (Docs. 57 at ¶ 27; 61, Ex. 1 at ¶ 27).  Lawn

4

Managers has offered Ms. Smith nothing in return for the request to withdraw the right to use the words "Lawn Managers" or "Progressive Lawn Managers."  (Docs. 57 at ¶ 28; 61, Ex. 1 at ¶ 28).

### III.     Characterization of the agreements

A threshold question in deciding this motion for summary judgment is whether the rights granted in the marital and post-dissolution settlement agreements are licenses, consents, or assignments.  These agreements are governed by Missouri law.  Under Missouri law, ordinary rules of contract construction apply to marital settlement agreements.  *LeKander v. Estate of LeKander*, 345 S.W.3d 282, 286 (Mo. Ct. App. 2011).  Plaintiff would have this court construe the rights granted by the marital settlement agreements to be terminable at will.  Plaintiff cites the general rule that "a contract having no definite duration expressed or which may be implied is terminable by either party at will upon reasonable notice to the other."  *Loftness Specialized Farm Equipment, Inc. v. Twiestmeyer*, 742 F.3d 845, 853 (8th Cir. 2014).  This rule is easily understood in the context of service or franchise contracts, to which it has been applied.  *See id.; H & R Block Tax Servs. LLC v. Franklin*, 691 F.3d 941, 945 (8th Cir. 2012); *Armstrong Bus. Servs., Inc. v. H & R Block*, 96 S.W.3d 867, 877 (Mo. Ct. App. 2002).

But this general rule is incompatible with other more specific rules governing marital settlement agreements.  Where a perpetual contract in a commercial relationship, for instance, is not favored by public policy, marital settlement agreements exist in an entirely different context: they involve not just contractual but also family law considerations, and they are ratified and enforced in state court divorce proceedings.  Missouri law provides that a divorce court's order distributing marital property is "a final order not subject to modification."  Mo. Rev. Stat. § 452.330.5.  The divorce court in this case did not find the parties' separation agreements unconscionable; it incorporated them into the divorce and post-marital judgments, and the terms of the agreements are binding.  *See Eveland v. Eveland*, 156 S.W.3d 366, 368 (Mo. Ct. App. 2004).

Furthermore, under Missouri law, any terms related to marital property "may expressly preclude or limit modification of terms." Mo. Rev. Stat. § 452.325.6. The specific settlement agreement at issue in this case expressly limits modification or waiver of the terms unless in writing and signed by both parties. (Doc. 30, Ex. 1 at 24-25). It provides that the terms are binding except as to specific provisions for termination of certain obligations upon the death of either or both parties. *Id.* Therefore, in this case, the general rule that a contract without a definite duration is terminable at will simply does not apply. Instead, the express mention of a limited duration as to defendant's right to use "Lawn Managers" implies that the next sentence granting defendant the unqualified right to use "Progressive Lawn Managers" grants a perpetual right. (Doc. 57 at 13-14).

The court must determine the precise nature of these rights, however, as either an assignment, license, or consent. An assignment occurs when one party assigns rights of ownership in a mark to the other. 3 McCarthy on Trademarks and Unfair Competition § 18:79 (4th ed.). A license occurs when one party grants another party the right to use a mark it owns in return for consideration. *Id.* "In a license, the licensee is engaging in acts which would infringe the licensor's mark but for the permission granted in the license." *Id.* In a consent, on the other hand, "the consentee is permitted to engage in defined actions which do not infringe the consentor's mark, and the agreement implicitly or explicitly recognizes that." *Id.* "Whereas a license brings the parties together into a common public image and a joint enterprise, a consent agreement keeps the parties apart at a defined distance. A license integrates, while a consent differentiates." *Id.* As the Seventh Circuit observed in a seminal trademark case, a consent agreement "is not an attempt to transfer or license the use of a trademark, or any rights therein, or in any word thereof, but fixes and defines the existing trademark of each, that confusion and infringement may be prevented." *Waukesha Hygeia Mineral Springs Co. v. Hygeia Sparkling Distilled Water Co.*, 63 F. 438, 441 (7th Cir. 1894).

For purposes of this motion, and based on the undisputed facts presently before this court, the agreements in question fall into the following categories. Randy granted

6

Linda a license to use the name "Lawn Managers" until December 31, 2014. Use of the name "Progressive Lawn Managers" does not appear to have been assigned because no facts indicate that Randy owned rights to that mark. Instead, it was a consent, for the purpose of defining the existing marks of both parties to avoid confusion and infringement. This purpose was not explicitly stated in the agreements, but it is implied in the description of "Progressive Lawn Managers" as the unrestricted, perpetual name of Linda's new and separate business. The agreements in question gave plaintiff the right to the name "Lawn Managers" and defendant the right to the name "Progressive Lawn Managers."

### IV. Trademark infringement defenses

Plaintiff's motion for summary judgment seeks to strike Progressive's defenses and seeks judgment as a matter of law on Progressive's counterclaim. Plaintiff has alleged trademark infringement under 15 U.S.C. § 1114, which requires proof (1) of the validity of the Lawn Managers mark and (2) that defendant made unauthorized use of the mark likely to cause confusion, mistake, or deception. 15 U.S.C. § 1114. In its answer, defendant raised the affirmative defenses of consent, release, waiver, collateral estoppel, and unclean hands. Defendant also counterclaimed that plaintiff abandoned its mark.

#### a. Consent, release, and waiver

First, plaintiff argues that defendant's affirmative defenses of consent, release, and waiver fail as a matter of law. Defendant specifically pled that (1) when plaintiff "consented in writing as part of a settlement . . . that granted the right to use the name Progressive Lawn Managers;" (2) the marital and post-marital agreements functioned as a "release" to defendant "in that Plaintiff's principal expressly granted the right to use the name Progressive Lawn Managers and therefore released Defendant for the use of said name;" and (3) "[b]ecause the principal for plaintiff has previously agreed in writing to the use of the name, this acts as a waiver of any liability herein for the use of said name." (Doc. 25 at 10-11).

7

As discussed, there is no dispute for purposes of this motion that defendant has the right to use the name "Progressive Lawn Managers." The issue before the court is whether the Progressive logo has infringed the "Lawn Managers" mark. Although plaintiff has not demonstrated that, as a matter of law, it had a legal right to withdraw consent, that is not the dispositive question. The facts before the court demonstrate only that defendant had a consent agreement to use the name "Progressive Lawn Managers," not that it had consent to make an infringing logo, confuse customers, or otherwise hold itself out as the Lawn Managers business.

Similarly, the undisputed facts show that while plaintiff may have released any claim to the name "Progressive Lawn Managers," there was never a release of claims to trademark infringement if Progressive's logo confused consumers. Even if plaintiff released its claim to the name "Progressive Lawn Managers," it does not follow that it released any future claim to infringement on the "Lawn Managers" mark. There are no facts indicating that plaintiff stated it would not, following December 31, 2014, engage in legal action to protect its trademark. *Cf. Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.,* 758 F. Supp. 512, 526–27 (E.D. Mo. 1991), *aff'd*, 989 F.2d 985 (8th Cir. 1993).

Finally, while a license carries with it the waiver of liability for infringement during the period of licensing, *see* 3 McCarthy on Trademarks and Unfair Competition § 18:40 (4th ed.), the facts show that defendant's license to use the "Lawn Managers" mark expired on December 31, 2014. Plaintiff has alleged infringement after that date.

Accordingly, the consent, release, and waiver defenses fail as a matter of law and plaintiff's motion for summary judgment as to these defenses is granted.

b.  Collateral estoppel

Under the doctrine of collateral estoppel, or issue preclusion, "when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in another lawsuit." *Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1272-73 (8th Cir. 1997) (citations omitted). A federal court

8

looks to the substantive law of the judicial system that adjudicated the first case – here, the state of Missouri – in applying the collateral estoppel doctrine. *Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1475 (8th Cir. 1994). Missouri courts consider four factors in applying collateral estoppel: (1) whether the issues in the present case and prior adjudication are identical; (2) whether the judgment in the prior adjudication was on the merits; (3) whether the party against whom collateral estoppel is asserted is the same party or in privity with a party in the prior adjudication, and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *State v. Nunley*, 923 S.W.2d 911, 922 (Mo. banc 1996).

For purposes of the first element, Missouri courts consider whether the same issue of fact decided in the prior action is present in the subsequent action. *Novack v. Newman*, 709 S.W.2d 116, 119 (Mo. Ct. App. 1985). Issues are not identical if an indispensable element of the subsequent action was not determined in the prior litigation. *Id.* Although Missouri courts have not addressed issue preclusion in the context of trademark cases, the Supreme Court has explained that "issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1306 (2015) (holding that a registration lawsuit determined the same issue as an infringement lawsuit because "the same likelihood-of-confusion standard applies to both registration and infringement.").

Plaintiff asserts the factual issue of trademark infringement was not raised, litigated, or determined in the Hillsboro proceeding, so the defense of collateral estoppel fails as a matter of law. Defendant argues that issue preclusion applies in this case because plaintiff is raising an issue identical to one decided in the divorce proceeding: whether Ms. Smith may use the name "Progressive Lawn Managers." Although the earlier divorce proceeding did not directly address trademark infringement, defendant claims that because the court awarded Ms. Smith the right to use this name indefinitely, it cannot have infringed on any rights plaintiff may have had in the Progressive mark. *See ZW USA, Inc. v. PWD Sys., LLC*, 208 F. Supp. 3d 1025, 1039 (E.D. Mo. 2016) (holding

9

that the first element of a trademark infringement claim is that the plaintiff own the mark in question). Accordingly, defendant argues that plaintiff's claims are "inexorably entwined" with the court orders ratifying the settlement agreements of the parties.

However, the specific issue to be determined by this court is whether the Progressive logo is infringing on the Lawn Manager's mark. While the rights granted in the state court proceeding may be relevant to plaintiff's trademark infringement claim, the specific question in this case was not raised, litigated, or determined in the state court proceeding. The state court never applied the likelihood-of-confusion standard to be applied in this case. Therefore, the defense fails as a matter of law. Plaintiff's motion for summary judgment on this defense is granted.

### c.   Unclean hands

As its final affirmative defense, defendant asserts that it is protected from plaintiff's request for a permanent injunction by the equitable doctrine of "unclean hands." This doctrine bars equitable claims when the plaintiff's conduct is inequitable and relates to the subject matter of the plaintiff's claims. *Graham Construction Services, Inc. v. Hammer & Steel, Inc.*, 755 F.3d 611, 620 (8th Cir. 2014). That is, "equity requires that those seeking its protection shall have acted fairly and without fraud or deceit *as to the controversy in issue*." *Iowa Health Sys. v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 924 (N.D. Iowa 2001) (citing *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997) (emphasis in original). Courts have permitted application of the unclean hands doctrine in trademark cases where either (1) there has been "inequitable conduct toward the public, such as deception or misuse of the infringed trademark itself," or (2) where "the plaintiff has acted inequitably toward the defendant in relation to the trademark."  6 Callmann on Unfair Comp., Tr. & Mono. § 23:17 (4th ed.).

Defendant does not allege that plaintiff wrongfully acquired the trademark rights, but rather alleges that plaintiff violated the divorce decree by providing lawn services in zip codes assigned to defendant's principal and deceived the public by "advertising using one of Progressive's phone numbers." (Doc. 57 at 19) (citing Doc. 25 at 11, ¶ 6).

Defendant argues that plaintiff's own misconduct is the source of much of the alleged customer confusion, and it is therefore related to the trademark infringement claim.

Plaintiff argues that because the alleged improper conduct does not relate to the plaintiff's acquisition of trademark rights, it is irrelevant, and the defense must fail as a matter of law. Plaintiff further argues that its claim for damages is unaffected by the unclean hands defense, because damages are not an equitable remedy. The court agrees that this defense applies only to plaintiff's equitable claims, but rejects the argument that the defense can be applied only when plaintiff has improperly acquired trademark rights.

Although the defense of unclean hands is reluctantly applied by courts and is always scrutinized with a very critical eye, *Coca Cola v. Koke Co.*, 254 U.S. 143, 145 (1920), if plaintiff's own misconduct is the source—or part of the source—of the alleged customer confusion, then this may limit the scope of plaintiff's related equitable claims and remedies, which include disgorgement of profits. Even if plaintiff's unclean hands do not bar its trademark claim outright, the defense may be relevant to plaintiff's scope of relief. *Dream Team Collectibles, Inc. v. NBA Properties, Inc.*, 958 F. Supp. 1401, 1417–18 (E.D. Mo. 1997) (citing 4 *McCarthy on Trademarks* § 31:53, p. 31–89 ("[U]nclean hands usually means that the plaintiff's fault, like the defendant's, is relevant only to the scope of relief.")). Plaintiff's motion for summary judgment on this defense is accordingly denied.

### V.   Counterclaim of abandonment

Plaintiff also moves for summary judgment on defendant's counterclaim for cancellation of plaintiff's trademark registrations, arguing that plaintiff "nakedly licensed" its marks and thereby abandoned them under 15 U.S.C. § 1127. On this counterclaim, defendant seeks cancellation of plaintiff's trademark registration. *See, e.g., Hot Stuff Foods, LLC v. Mean Gene's Enterprises, Inc.,* 468 F. Supp. 2d 1078, 1090 (D.S.D. 2006) (citing 15 U.S.C. § 1119).

Under the Lanham Act, a mark shall be deemed abandoned "[w]hen any course of conduct by the owner, including acts of omission as well as commission, cause the mark

11

to become the generic name for goods or services on or in connection with which it is used *or otherwise to lose its significance as a mark*." 15 U.S.C. § 1127 (emphasis added). A registered trademark may be cancelled, thus negating a claim of trademark infringement, if it has been abandoned. 15 U.S.C. § 1064(3). Naked licensing is a form of abandonment that occurs when a trademark owner grants a license and "then fails to control the quality of the products made by the licensee, thus permitting a deception of the public." *Heaton Distrib. Co. v. Union Tank Car Co.*, 387 F.2d 477, 485 (8th Cir. 1967).

Plaintiff argues that defendant is barred from challenging the validity of plaintiff's trademarks due to licensee estoppel. In the Eighth Circuit, when there is a present and valid licensing agreement, it is a "long settled principle of law that a licensee of a trademark or tradename may not set up any adverse claim in it as against its licensor." *Seven-Up Bottling Co., v. Seven-Up Co.*, 561 F.2d 1275, 1279 (8th Cir. 1977) (citations omitted). As one treatise put it:

> By entering into the license agreement, the licensee recognizes the licensor's ownership of the mark and, by implication, covenants not to challenge the licensor's rights. This implied covenant also estops the licensee from claiming that the licensor abandoned its rights by failing to exercise adequate quality control during the term of the license. Thus, in an infringement action against a terminated licensee that refuses to stop using the mark, the licensee may not challenge the licensor's ownership or claim abandonment on facts that occurred before the agreement was terminated.

2-6 Gilson on Trademarks § 6.07 (2017).

A number of considerations preclude summary judgment on this counterclaim at this time. First, it has not been established when the marks in question were registered in relation to the May 2012 and July 2014 agreements. Plaintiff has alleged, but defendant has not admitted, that the logo for Lawn Managers was registered in 2012, and the phrase "Lawn Managers" was registered in late 2015. (Doc. 1 at ¶ 5, Ex. 1; Doc. 25 at ¶ 5).

Eighth Circuit case law suggests that licensee estoppel only applies to licensees of a registered mark. *Seven-Up Bottling Co. v. Seven-Up Co.*, 561 F.2d 1275, 1280-81 (8th Cir. 1977). In *Seven-Up Bottling*, the parties had a long history of creating license

agreements.  Their earliest agreements occurred when the marks had not yet been registered.  The licensee argued that estoppel should not apply, because the trademark ownership rights had not yet accrued at the time of the initial licensing.  In dicta, the Eighth Circuit conceded this position to have merit, except that the parties had subsequently made several license agreements *after* the marks at issue were registered. *Id.*

Here, plaintiff does not accuse defendant of infringement upon its logo, which was registered during the period of the license at issue, but rather of infringing upon the phrase "Lawn Managers."  It has not been established that this phrase was registered at the time Randy gave Linda license to use it.  The *Seven-Up Bottling* rationale precludes application of licensee estoppel in this case, because the license occurred before the mark was registered and there were no subsequent licenses.

Second, and similarly, the Eighth Circuit has acknowledged that a licensee "is not estopped to challenge its licensor's claims to a mark unless the licensee's position is inconsistent with the license." *Seven-Up Bottling Co. v. Seven-Up Co.*, 561 F.2d 1275, 1280-81 (8th Cir. 1977) (citing 3 R. Callmann, The Law of Unfair Competition, Trademarks, and Monopolies § 78.2, at 454 (3d ed. 1969)); *see also Kebab Gyros, Inc. v. Riyad*, 2009 WL 5170194 (M.D. Tenn. Dec. 17, 2009).  As defendant argues, the "license" in this case is one sentence in a consent decree, so plaintiff can point to no terms of a license agreement that would be inconsistent with its abandonment claim.  The license was granted to Linda until December 31, 2014.  It is defendant's position that it is using the phrase "Progressive Lawn Managers," which was *not* subject to a license between the parties, and it is plaintiff's position that because the word "Progressive" in front of "Lawn Managers" on defendant's logo is difficult to see, Progressive is essentially only using the phrase "Lawn Managers," which *was* subject to a license between the parties.  This dispute of material fact precludes summary judgment.

Third, the Supreme Court has held that estoppel does not prevent a licensee from asserting that a license itself is void as a naked license.  *Ritz Assocs., Inc. v. Ritz-Carlton Hotel Co.*, 35 Misc. 2d 425, 428 (Sup. Ct. 1962) (holding that licensee was not estopped

13

from bringing challenge against licensor Ritz-Carlton Hotel Company for the name "Ritz Tower," as the license was "void as against public policy because of its tendency to confuse the public."); *see also Kebab Gyros, Inc. v. Riyad*, No. 3:09-0061, 2009 WL 5170194, at *7 (M.D. Tenn. Dec. 17, 2009) ("[I]t is not in the interest of equity for the doctrine of 'licensee estoppel' to bar a legitimate examination into whether the plaintiff ever had a protectable mark."). Progressive is not estopped from arguing that its own license was void as against public policy or as the licensing of a non-protectable mark.

Finally, the parties before the court are not, in fact, the licensor and the licensee—Randy and Linda, respectively. Instead, the parties are two corporations whose principals are this licensor and licensee. Licensee estoppel "precludes only licensees from a challenge: other parties, even those closely affiliated with the licensee, are not foreclosed." *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, 650 F.3d 1139, 1150 (8th Cir. 2011).

While plaintiff has submitted evidence that Randy is the principal of plaintiff Lawn Managers and Linda is the principal of defendant Progressive, the Eighth Circuit only bars companies that are the "alter ego" of the licensee from challenging the validity of the licensed mark. *Id.* The doctrine does not estop an agent of the licensee from disputing the mark's validity. *Id.* ("If a licensor can produce sufficient evidence that an agent is an alter ego of the licensee, the agent may also be estopped from challenging a trademark under the doctrine of licensee estoppel."). The Eighth Circuit considered the assertion a corporation was "under the absolute control" of a licensee to be insufficient to estop that corporation from challenging the validity of the license at issue. *Id.* As the movant, plaintiff has the burden to submit evidence that the parties are alter egos of the licensor and licensee. *Id.* Here, plaintiff has not presented evidence that defendant was Linda's "alter ego" for purposes of licensee estoppel. *See id.* Accordingly, plaintiff's motion to dismiss the counterclaim on this ground fails.

A court is free to consider the particular circumstances of a case, including the nature of the licensee's claim and the terms of the license. Restatement (3d) of Unfair Competition § 33 cmt. d (1995). Because licensee estoppel is an equitable doctrine, the

14

court may consider the circumstances of the particular case.  This case does not involve a traditional license, and in the circumstances of this case, it would be premature to decide the licensee estoppel doctrine at this summary judgment phase.

## VI.  ORDER

For the reasons stated above,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment (Doc. 53) on the affirmative defenses of consent, waiver, release, and collateral estoppel **is sustained.**

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Doc. 53) on the affirmative defense of unclean hands **is denied**.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Doc. 53) on the counterclaim is denied.

/s/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 27, 2017.