UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| LAWN MANAGERS, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:16 CV 144 DDN |
| PROGRESSIVE LAWN MANAGERS, INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before the court on the motion of defendant Progressive Lawn Managers, Inc., to strike the report of plaintiff's expert Fernando Torres. (Doc. 66). Plaintiff opposes this motion. (Doc. 73). The court held a hearing on the matter on September 11, 2017.

### Legal Standard

Federal Rule of Evidence 702 allows a witness who qualifies as an expert by knowledge, skill, experience, training, or education to testify in the form of an opinion or otherwise about scientific, technical, or other specialized knowledge. Fed. R. Evid. 702. Expert opinion testimony must pass threshold standards of reliability and relevance. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The inquiry of Rule 702 is a flexible one, *id.* at 594 n. 12, but the *Daubert* court identified five important considerations relevant in determining whether these standards are met.

First, the evidence must be scientific, technical, or otherwise specialized. Fed. R. Evid. 702. Opinion evidence is "scientific" if it is grounded in the methods and procedures of science. *Daubert*, 509 U.S. at 589-90. Second, the evidence must be "knowledge" and not mere "subjective belief or unsupported speculation." *Id.* at 590. This means that the subject of scientific testimony must be derived by the scientific

method. *Id.* Third, Rule 702 requires that the evidence be relevant in the sense that it is helpful to the trier of fact to decide a fact at issue. *Id.* at 591, 592. Fourth, if the expert opinion is based on evidence that is inadmissible, the opinion may be admitted only if this evidence is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject." *Id.* at 595 (citing Fed. R. Evid. 703). Fifth, the trial court must determine whether the expert's reasoning and methodology are reliable, *i.e.*, (a) whether they can be and have been tested; (b) whether they have been submitted to peer review and publication; (c) whether the asserted scientific technique has a known or potential rate of error; and (d) whether the asserted technique is generally accepted in the scientific community. *Id.* at 593-94.

These can be summarized in Rule 702's post-*Daubert* amendment, which requires expert evidence be (a) such that it "will help the trier of fact to understand the evidence or to determine a fact in issue;" (b) "based on sufficient facts or data;" (c) "the product of reliable principles and methods;" and (d) an application of "the principles and methods to the facts of the case." Fed. R. Evid. 702 (2011). The Eighth Circuit has identified further factors that are relevant in determining reliability: the extent to which an opinion was developed for litigation as opposed to naturally flowing from an expert's research and the extent to which the proposed expert eliminated alternative explanations in reaching his or her conclusions. *See* Sappington v. Skyjack, Inc., 512 F.3d 440, 449 (8th Cir. 2008) (citing *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681 (8th Cir. 2001).

The proponent of the expert evidence must show that it is reliable and would be helpful to the finder of fact, and that the expert is qualified to be a witness under Rule 702. Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory-committee's note. The expert must explain how he developed his opinions. Fed. R. Evid. 702 advisory-committee's note. An expert's opinion is subject to being rejected if it is substantially based upon the expert's subjective belief or unsupported speculation. *Estate of Claison L. Groff v. Aquila, Inc.*, 2007 WL 4644707, at *9 (S.D. Iowa 2007) (*e.g.,* ruling expert opinion not admissible as unsupported and speculative regarding size of natural gas leak and that the

hole through which the gas escaped "could have or must have closed during shipment of the furnace").

While the district court focuses on an expert's principles and methodology, expert conclusions may also factor into the admissibility calculus. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). A court may conclude that there is "simply too great an analytical gap" between a proffered opinion and the data in a case, and it is within the court's discretion to conclude that data relied upon is not sufficient to support an expert's conclusions. *Id.* A court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* And, finally, "expert testimony on legal matters is not admissible. Matters of law are for the trial judge[.]" *See Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (citations omitted).

## **Report**

The expert report at issue is dated September 27, 2016; is 19 pages long; and contains information about Mr. Torres's assignment, his qualifications, the background of the case, an assessment of damages, and prejudgment interest. His report concludes with a summary of his opinions, the attachment of exhibits, and several appendices. (Doc. 30-3). Fernando Torres's Summary of Opinions is as follows:

> Upon reviewing the documentation listed in Appendix B to this report, performing independent research, as well as reviewing the relevant documentation produced in connection with the case, I arrived at the following conclusions regarding the alleged damages in this matter, the bases for which are explained in the preceding sections of this report.
>
> 1.  Defendant's infringing revenues for the period January 1, 2015 through 2016 are [ ].
> 2.  Economic damages in the form of a disgorgement of the Defendant's profits for the period January 1, 2015 through min-2016 reflecting Progressive's estimated EBITDA margin [ ] amount to no less than [ ].
> 3.  Economic damages in the form of lost profits are quantifiable at a rate of no less than [ ] per new account/year for infringements after July 25, 2016.

3

> 4. Economic damages in the form of corrective advertising are estimated at no less than [ ].
> 5. If requested by the Court, I intend to provide a calculation of prejudgment interest on the damages award.
>
> The foregoing conclusions are based upon the documents and information reviewed as of the date of this report, as well as my intellectual property valuation and damages assessment experience. I hold these opinions with a reasonable degree of professional certainty. I hereby reserve the right to amend these conclusions should additional information and/or documents become available for review.

(Doc. 30-3, at 18-19).

## Analysis

Defendant argues that the expert report and the expected testimony of Fernando Torres should be stricken, because his opinions relate to ultimate issues reserved to the court, involve matters outside his expertise, offer legal conclusions, and are not the products of reliable principles or methodology. (Doc. 67).[1]

Any opinion(s) about what the law provides or requires by Mr. Torres in his report or testimony will not be admitted. *See Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d at 841. Mr. Torres may opine and testify as to an assessment of damages, based on his training and expertise as an economist and forensic financial analyst, including how market confusion may lead to loss in brand value. However, he may not opine on, for example, whether the conduct at issue satisfies the legal standard of trademark infringement, the legal burden on either of the parties, the applicability of treble damages or attorney fees, or whether there was a likelihood of confusion. These are all legal matters reserved to the court. *See id.* Although Mr. Torres frames his discussion of Sections IV.A and B of his report as opinions "from an economic perspective," they include only legal observations and conclusions, and they are stricken. (Doc. 69, Ex. 1 at 10-11).

---

[1] Plaintiff's argument that defendant waived certain objections by attaching the report to a 2016 filing without, at the same time, filing its objections to it, (Doc. 73 at 1) is overruled.

While Mr. Torres may ground his opinion(s) on hearsay evidence, s*ee* Fed. R. Evid. 703, the background data in his report in Section III.B is irrelevant to a calculation of damages. (Doc. 69, Ex. 1, at 4-8). Mr. Torres does not refer to any of this information in describing his ultimate economic opinions. (*Id.* at 11-18). This information is also stricken.

The remainder of Mr. Torres' report is permitted. "When the district court sits as the finder of fact, there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself. . . . Thus, we relax *Daubert's* application for bench trials." *Watson v. United States*, 668 F.3d 1008, 1015 (8thCir. 2012) (citations omitted). The remainder of defendant's arguments go primarily to the correctness or credibility of Mr. Torres' opinion, not its admissibility. Mr. Torres relied on tax returns and other financial statements from the companies, as well as publicly available information, such as economic census data from the U.S. Department of Commerce. (Doc. 69 at 11-14, 17 n. 46; Doc. 67, Ex. 2 at 19, 22). The court is persuaded that even though this is a limited data set, it nevertheless constitutes adequate grounds for Mr. Torres' expert report, even if other experts might employ alternate methods, consider additional factors, or reach different conclusions. There is not too great an analytical gap between the data in this case and Mr. Torres' proffered opinion. *See Gen. Elec. Co.*, 522 U.S. at 146. Whatever doubts the court may have regarding the usefulness of the testimony are resolved in favor of admissibility, subject, of course, to the persuasiveness of the evidence. *See United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011).

Finally, the court notes that Mr. Torres, assuming liability, opines on the varieties of relief available to plaintiff and what amounts those would be. The admission of Mr. Torres' report is not an indication that each of these varieties of relief will be supportable at trial. For example, damages in this case may not be susceptible to prejudgment interest, and corrective advertising, if the court does find liability and determines that corrective advertising is appropriate, could be imposed on the defendant as a form of equitable relief different than the one suggested by Mr. Torres. Under 15 U.S.C. § 1117(a), upon a finding of liability, plaintiff would be entitled to recover, "subject to the

principles of equity," defendant's profits, any actual damages, and the costs of the action. 15 U.S.C. § 1117(a). Plaintiff would be "required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* Assuming liability, the court would have discretion to enter a judgment for a sum it finds to be just, if it determines that a recovery based on profits is either inadequate or excessive. *Id.*

## II. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that defendant's motion to exclude the testimony of plaintiff's expert Fernando Torres (ECF No. 66) is GRANTED in part. Mr. Torres may not offer irrelevant factual evidence or legal testimony, but may offer the remainder of the opinions contained in his expert report.

/s/     David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed and filed on September 28, 2017.